on the people of the state of Illinois, happily by Judith Kelley, versus Ashley S. Appellant by Louis Mollant. Mr. Mollant, you may proceed. May it please the court, I'm Louis Mollant, attorney for the appellant. Excuse me, I mispronounced your name. I'm Louis Mollant. This is a case about shortcuts. The state's attorney is asking this court to permit it to take, the trial court to take a shortcut in proving the juvenile cases. In the instant case, the state's attorney wants to take a shortcut using 218.4 of the Juvenile Court Act to introduce expert opinions that are not authorized by law and not in any fundamental notions of due process and fair play. The juvenile petition in this case alleged that the respondent child's leg was fractured and that injury could not have occurred absent abuse and or in the black, unpart of my crime or the father. The state's attorney's principle evidence to prove that the child's fracture was caused by abuse consisted of State's Exhibit 2, and in particular, a letter containing State's Exhibit 2 prepared by Dr. Petrax specifically for the petitioner, DCFS, and his prosecutorial arm, the state's attorney. State's Exhibit 2 generally consists of almost entirely of hearsay statements, and Dr. Petrax's letter contained hearsay, and Dr. Petrax's letter contained an opinion on the ultimate fact to the effect that the respondent's child's fracture was, quote, highly suspicious for non-accidental trauma, close quote, and that the child's fracture is, quote, most consistent when inflicted trauma, close quote. Let me be clear. Without State's Exhibit 2, and in particular, Dr. Petrax's letter, the state's attorney had insufficient evidence to support the allegation that the respondent's child's leg was fractured in any way other than by accidental means. Of course, anything short of non-accidental fracture would seriously jeopardize the state's attorney's petition. As to my client, there were no allegations except old, indicated DCFS reports based on credible evidence, not the preponderance of the evidence, so there really wasn't much there. Dr. Petrax's letter was introduced over our objection under the auspices of Section 218.4 of the Juvenile Court Act. Section 218.4 is a unique statutory provision that allows permission of hospital and agency records that meet the business record criteria. It dispenses with the necessity of the keeper of the records to come to court and establish a preliminary foundation through a statutory delegation and certification process. Although initially, and I might add correctly, the trial court denied the admission of Dr. Petrax's letter on the grounds that it was not a business record per se, Dr. Petrax's letter was eventually admitted under Section 218.4 because, according to the trial court, that's what associate circuit judges had done in Peoria County. It is well known that the admission of an expert's testimony requires the proponent to lay adequate foundation, establishing that the information upon which an expert bases his opinion or her opinion is reliable. By admitting Dr. Petrax's letter under 218.4, the state was allowed to take an unauthorized shortcut to prove non-accidental and inflicted injury. That shortcut resulted in the state avoiding or escaping almost entirely the numerous foundational and evidentiary requirements generally associated with expert testimony. For example, the state wasn't required to even qualify this expert to establish her qualifications in the area for which this documentary testimony was being offered. Was she a forensic pathologist or pediatrician? What kind of doctor was she? We don't know. The state was not required to establish that the PRC pediatrics or center records themselves are hospital records or agency records, and that's required by 218. The state was not required to establish that the PRC is a business or have the burden of showing that or identifying the nature of the PRC business. How is it that we are going to identify whether these are business records unless we know that it is a business and what the nature of that business was? That was circumvented by 218. The state was not required to elicit that the putative medical expert or her conclusions were within a reasonable degree of medical certainty. The document goes in. The state did not have to defend this expert's opinion. If the document's admitted, it's all true notwithstanding any discrepancies, it's not subject to cross-examination. Our position as putative experts of opinion ought not be shielded from vigorous cross-examination. The state was not required to demonstrate that the information relied upon by this expert in reaching her particular conclusion was a type of information that would normally be relied upon by an expert in that particular field. Moreover, the state was not subject to the in-court reliability assessment that a circuit judge could see her, observe her demeanor and her conduct, and determine her credibility, nor were her techniques subjected to any kind of a determination of whether or not they would meet Frey's standards. In other words, was there sufficient basis both in the record and the medical scientific theory to support her conclusions? And really, although not evidentiary per se, how are we going to impeach her? If we have a treatise that disputes her conclusions, how do we present that without a witness? And I could go on. But this Court's holding in Troyman v. Reyes does not give parties free reign to introduce medical records as a substitute for expert medical testimony. That is exactly what the state is trying to do in this case before you today. The state's attorneys have attempted to introduce documents that have not been shown to be business records and the negative consequences of that strategy I've outlined for you just now. Now, the trial court's interpretation below of what is admissible under 218-4 is not only contrary to the plain language of the statute, but it effectively shifts the burden of proof to the respondent. And it shifts the cost to the local taxpayers in their respective county who either pay for that state's expert to come to court and testify or to take an evidence deposition or pay for us to get a rebuttal expert, which we may not need if we could cross-examine this expert or at least do an evidence deposition. Furthermore, in this case, States Exhibit 2 is simply not the sort of record that could be admitted under the streamlined procedure established by 218-4. But even if it were admissible under 218-4, Dr. Petryk's letter, which is part of that exhibit, would not be admissible as a business or medical record inasmuch as it is without a doubt prepared in anticipation of litigation and precisely the sort of expert opinion that this appellate court admonished against in Troy. It is evident from Dr. Petryk's letter that she was tenured as expert testimony through this document. In the nature of either an expert or a consulting expert, I guess the definition could be found in Rule 220, I believe that the chronology I've laid out in my brief concerning the retention of Dr. Petryk clearly establishes that Dr. Petryk was retained by the state to develop and give a particular opinion concerning the cause of the minor's injury to be submitted at trial. Did the trial court base its findings just on that letter? The trial court distanced itself from the letter stating that it did rely on the letter. However, without the letter, the main argument would be the parent's history, which is old history. The father had an endangerment issue. I think there were some indicated reports. And as I've indicated in my brief, those are fine to allege, but there are two problems with that. First of all, they're distant in time. Second of all, they don't prove the current neglect of the injurious environment. You can't wait two, four, five, I think it was a five-year-old conviction on the father. The indicated reports are just based on credible evidence. So that alone, I don't believe, would support a finding neglect in this case. The judge did distance itself, but I think if we read the ultimate conclusions carefully and we get to the dispo, we know that the judge did end up relying on that letter. Was the only other evidence the testimony of the police officer? And my client testified how the accident was caused. And they were very consistent, and I've argued that the evidence is against the manifest awaited evidence, because we had clear in-court testimony by my client to the effect how this injury occurred to the minor. The only way the court could discount my client's testimony was to consider the state's Exhibit 2, which drew up a separate conclusion. Okay, now, and you're saying State Exhibit 2 is inadmissible or should not have been considered because? Well, first of all, it was not established as a hospital or an agency record, Exhibit 218. Secondly, it was prepared in anticipation of litigation. In other words, this was their expert. The letter really was what they sought to admit. They included all of the other documents, which you will find are superfluous because they can be found in the other exhibits. So you're saying there's nothing in this record from medical personnel that would support a trial judge's conclusion that this could not have occurred in the manner in which the parents claimed this injury occurred? Well, and this goes to the issue of the manifest awaited evidence. If you look at the evidence, the doctors, and you will find, and these are the kinds of opinions, and I'm not disputing that you can raise the hypothesis, the medical hypothesis, that this fracture might have occurred on accident. And that is raised throughout the medical records. By treaters? By treaters. But they are hypotheses that are awaiting corroboration and proof. They are not conclusions. They are not opinions. And, of course, we can't draw from those hypotheses that, in fact, that was the causation. There's no direct linkage. And they don't rule out the explanation for how it happened. Now, let me go straight to the hypothesis that this had a high specificity for accidental. Really, it's a suspicion. And we know suspicions don't always result in actuality. But in this case, the doctors did what doctors are supposed to do. They said, we have a fracture. It's a bucket-handled fracture. These things tend to be associated, perhaps, with child abuse. Although Dr. Kramer points out that they offer three explanations, that the dog could have done it, osteogenesis imperfecta could have caused it, or child abuse. Now, two of those three are not a neglect. Okay? And one of them is consistent with warrants. Exactly. Right. One is consistent with warrants. One nobody thought about. The third one is a state position. So these doctors did what doctors are supposed to do, is to try to scientifically arrive at a conclusion as to what we need to know to treat this. What did they do? They submitted the child to an MRI. That's a full skeletal survey and a CTS scan. What were the results of that? Negative. Negative for any corroborating injury that this was, as the state has asserted, sort of a shaken baby fracture. So the medical evidence, they did what they were supposed to do, and the medical evidence came back and says, well, we don't think, nobody said this. But the medical evidence clearly weighs against the conclusion that Dr. Petrak came up with, which is this was accidental. Her basis was the child should have been crying all night and all morning. That was the basis for her conclusion primarily, because the test results did not support her conclusion. So I would argue that the manifested evidence cuts against the state's assertion that this was caused any other way than accidentally. But we never had an opportunity to ask Dr. Petrak about that. We never had an opportunity to inquire as to how she drew her conclusions. She was permitted to simply put it in writing, put it into the courtroom, and it's before the judge on impeach. And this is the problem. This is a situation where, effectively, it shifts the burden to the respondent. Now, the solution is quite simple. Medical opinions that are reasonably pertinent to the diagnosis of treatment or furtherance of a medical treatment are more likely to be admissible. It makes sense. That's what makes them reliable. That's distinguished from a solicited or gratuitous opinion. Those are not reliable, and that's what we have here. Now, if the state tries to argue she's a treating physician, I would beg to differ. A 10-minute exam of a child of something of this nature doesn't make her a treating physician. She basically concedes she's not a treating physician. It's pretty quiet. She did order some testing. Sure, and experts can do that. Whether it's a piece of machinery that needs to be tested, they can order stress tests. That doesn't make them the experts, you know what I'm saying? It makes them a pain expert. So Dr. Pusewitz was not prepared until long after the minor had received all the medical care that that minor was going to receive. So it was at best superfluous. Nothing in her opinion, and you look at her recommendations, there's no recommendations for treatment. All that was done. So a few things have been more devastating in June report than the unchecked, unquestioned introduction of expert opinion evidence under the guise of a business record pursuant to 218.4 of the Juvenile Court Act. This is not an inconsequential shortcut. At best, it threatens the very purpose of the Juvenile Court Act, and that is the best interest of the child. How does it do that? Well, that interest cannot be honored when the trial court is deprived of the full benefit of having the state's putative expert's opinion subjected to vigorous cross-examination or at least the requirement of the basic reliability of a business record. Without that, we don't have a very reliable and very trustworthy opinion, and so the judge at the trial court level is forced to make decisions without the full panoply of information now available. So you're saying, to kind of make this simple, is that normally what we say in a bench trial is that a judge knows the law will not consider anything inadmissible, okay? Is that all right? Or improper? Okay, that's... I think in an aspirational way, that is... Right, but I mean, that's, you know, you've read defendants in courts like these where that's always a fail-safe harbor, okay? Now, what you're saying is, what you're saying is, is that there's nothing absent, Dr. Petrak... Petrak? Yeah, Petrak. Which you're saying is really a disguised expert opinion. There's really, if you take that out, and the trial judge says, you know, that's what it is, I can't consider that. You're saying there's nothing in this record that is going to support the conclusion of the trial court on its findings, right? Well, I'm saying there's insufficient evidence to support the trial court's conclusion because if you take that out, take that ultimate conclusion, it does not appear really anywhere else in the medical records. I mean, there's discussion of the possibility, but those are immature, those are undeveloped notions. Well, can't the court make that conclusion? If the court were a medical expert, the court could make that conclusion, but... Well, no, I mean... It's not... We don't let experts take away the decision-making of the court and say, well, the court, you can't decide it this way because there's experts that say something else. Expert is just evidence. Exactly, and in this case, the court should not have considered Petraeus. Well, let's assume arguably they didn't because we actually have a statement from the trial court that says, I didn't consider that, you know, I don't need to consider that, there's enough here. Is that a fair statement of what the trial court's trying to say? I think that's what the trial court was trying to say. I don't think that... But now you've got to say, okay, true, that's what they said, but let's take them at their face, take the court at its face value and say it did not. What's left in this record? Is there anything in this record that will support the conclusion and the findings of the trial court that this child was neglected and abused? No. I think all that's... If the court did not, in fact, consider the State's Exhibit 2, and I don't believe that the other medical exhibits support the finding that this was not accidental, all that the court was left with was a four- or five-year-old child engagement commission on the part of the father and a couple of PCFS-indicated reports. And on that basis, the court would argue, well, that constitutes an injurious environment under preponderance of the evidence. Well, first of all, you've asked why would you wait five years, if you really asserted that, other than as a part of that act, and how does the indicated... If indicated reports are going to constitute preponderance of the evidence, injurious environment, then we might as well just skip to the report altogether, because every indicated report is going to translate into a finding of neglect. And I don't think we want to go down that route. Okay, so you're saying that one exhibit, okay, which is the medical exhibit, right? Yeah, it's one... I think there's a couple of them. Okay, but it's... The others don't... I'm not calling it a medical exhibit because I think it's... Okay. It's really an expert's opinion. There's nothing in there, if you take away the expert's conclusions, quote, quote, expert's conclusions, there's nothing in there that would allow trial court to make a finding of causation? Not... Not in the State's Exhibit 2 or... Absent State's Exhibit 2. Well, I think you already answered it, absent. Okay, absent is... No, I think... But if you parse that exhibit and take away what are inclusionary statements... Well, then the question would arise, is the existence of a bucket panel fracture, is that a per se indication of neglect? Of, you know, of... Is it Kramer? Dr. Kramer? Yeah, Kramer. Kramer saying that that fracture could occur in three ways? She proposed three possibilities for the fracture to occur, and we've already mentioned those. Other doctors didn't go that far, but did go ahead and order additional tests. I think the fact that they ordered more tests is more than enough evidence to suggest that whatever statement was made that they were looking for cooperation. They needed more information to arrive at any conclusion as to what may have caused the injury. And I would... And as I've indicated before, they basically ran all the tests they typically would run. Came back negative. And so now we have... Now we're right back to she's got a buckle-handled fracture. And there's no evidence... There's nothing in any of the exhibits that would suggest to us that a buckle-handled fracture standing alone is absolute evidence of a non-accidental or inflicted trauma. So... And I don't... I'm not trying to parse the statements, but I also say those are statements that doctors make. You look at an injury, you try to identify how it was caused. They like to know how things were caused so that they know how to treat them. And because if it's something that has the possibility of recurrence, they want to make sure that it doesn't occur. And in this case, that's why I believe the tests were ordered. I don't know, but I suspect that's what medical doctors do. And when the tests came back, we knew, you know, this was a fracture. It could have happened not necessarily non-accidental or inflicted trauma. But I don't think that there was enough there for the trial court to reach its conclusion. And I think it would have had to do more to then exercise its lay knowledge and lay opinion to arrive... to make a connection between the buckle-handled fracture and the causation. I think there needed to be linked somehow and that isn't done by the balance of the evidence. Your time is up. I don't believe there are any more questions. Thank you, counsel. Ms. Kelly? May I please report, counsel? The people submit that the evidence in this case even without the letter from Dr. Petrak was sufficient to sustain the judge's finding and the judge went out of his way to indicate because a foundational and other objections had been made to the letter to state his findings without considering the letter. He said that there was sufficient evidence to show by the conscience the evidence that injury's environment had been established and he went through the reasons why and the other allegations of the petition which the respondent did not contest but in fact stipulated could be proved revolved around the fact that each parent separately had been indicated for risk of harm by DCFS. The father had a fairly extensive criminal history which included DUI, included endangering the life or health of a child, included dangerous animals running at large and criminal damage to property and disorderly conduct and a recent 2008 conviction for forgery. But what does indicated by DCFS mean? I think it means again, probably a level like ponderance of the evidence it's more likely than not that it occurred. Non-indicated, there's no follow-up and they couldn't substantiate that it had occurred. Indicated means there was some corroboration I believe of whatever Is it phone calls? It could be phone calls could be hotline, right, and they're all investigated and they're either marked non-indicated if there's no corroboration or indicated if there's some but not enough to open a file and to start a proceeding like this. And it's important to remember too that what the allegation of the petition was this was a neglect by injurious environment. This is not an abuse allegation nor did there need to be a finding as there are in some cases that the abuse was inflicted by a parent. There was no allegation of that there was no finding of that. What the people alleged was that the minor was neglected by reason of an injurious environment because of the fact that the petition alleged several grounds one of which was this non-accidental injury and then the fact that the parents had each been indicated for risk of harm and that the father had gone beyond that, had been found an unfit parent twice in the health of a child. When the judge put that together without even considering Dr. Petrak's report, he found that the evidence was sufficient to show by preponderance of the evidence that this child was neglected by reason of an injurious environment. He then went on to consider the letter. He said if you add the letter in, then I find it by a much higher standard which is not required at this time. But I would find that it had been proved. He doesn't state the standard. I assume he meant convincing. Okay. The parents were saying the injury to this child was caused by a dog jumping on the child while the child was in a child restraint seat, right? That's correct. Why didn't the state allege that it's an injurious environment? I mean, you've got to admit that that's the way this injury occurred and you're saying it's really not a situation of you know injury. The state was not involved in the charging. I think that they But can you bring an injurious environment charge based upon having children in an environment where there are animals that could harm them? I think in this case, given the father's history, that that would have been a possibility since he had ordinance violations for dangerous animals. I think it could have been a possibility it was not charged. And then accepted the parent's explanation and go from there? Except that it was the people's theory and what the court accepted that the injury could not have happened a day earlier and the child not have complained throughout the day. That the injury was inconsistent with the reported history because it was alleged to have occurred during the early daytime hours of May 31st and yet the child did not cry and apparently didn't want his leg touched until 24 hours later or nearly 24 hours later. That's why the doctors felt and the judge felt from the evidence that the reported history was inconsistent with the reported reaction of the child. That they said oh we checked him and we found nothing and he was fine all day and he was fine when we went to bed at night. We thought maybe he had a tummy ache but he was fine and it was only in the morning that he wouldn't let us touch the leg. And that's why the judge I think concluded that it could not have happened the way that the mother had said. Did any of the doctors except Dr. Petrak ever say what they thought the cause of the accident was or the injury was? No my recollection is that Dr. Kramer who was the emergency room physician and then the radiologist and Dr. Kramer must have said this after getting reports from the radiologist. The radiologist said it was this bucket handle fracture which is highly suspicious for a non accidental trauma. Dr. Kramer said that there was no  that the bone abnormalities were ordered was not only to rule out any other fractures but also to rule out the osteogenesis. A very young child, a two month old child and I don't know. I assumed when I read the records that a skeletal survey would show if there were any bone abnormalities that the osteogenesis speculation that she had as to three reasons three ways that this accident or this injury could be caused. I don't believe there's a finding later. I didn't look at the result of the skeletal survey to see if it ruled out osteogenesis. But there's no report from any of the other doctors saying that this resulted from abuse? No. All of the doctors on June 1st, the day he's brought into the emergency room, Dr. Kramer, the radiologist and Dr. Patrack, all of them have in their notes that day that it's a distal bucket handle fracture, a highly suspicious but non- accidental trauma. And frankly as people said in their brief, the only difference between what Dr. Patrack wrote in her notes that day and the July 4th opinion letter which was then introduced into evidence was the statement or her opinion writing this letter in anticipation of litigation but in fact all the other observations, everything else were her first hand observations, her examination of the child, her interview with the mother and her review of the medical records in addition to perhaps looking at reports that came in later from other sources that all of the evidence   to the trial judges. So let's go back to what I was trying to clarify with the program counsel earlier. Let's say they're right. Okay. You're trying to sneak in an expert opinion as he would say and it's procedurally unfair and it shouldn't be done. Let's say we agree. What's left in this record? How can you support the trial judge's decision? Okay. I can support the trial judge's decision by his finding, by his specific finding, which I quoted twice in there, where he goes through and talks about what the household is left with. We have a two-month-old child with a broken leg. We have parents who have a long history of DCFS indicated findings for risk of harm to children. We have a father who's got a criminal conviction for endangering the life or health of a minor. So just based on that, we have a child, a very young child, with a non-accidental fracture, which is what all of the medical records showed at that time. Highly suspicious of non-accidental. Right. I think that's the problem we have here. That's the problem. But we also have a  is in an injurious environment because he has this fracture which is highly suspicious of non-accidental and he's in an environment with two parents, one of whom in particular and each of whom has had some prior indicated reports with this condition. Does it trouble you at all that in his finding that the judge states that because the father didn't testify at all that that adds more strength to the state's case? I wondered why he said that. I don't think he this is not a criminal case and it's not a case where he has a right to not testify. I think he viewed the father as the one with the more serious questions raised as to his background and therefore the injurious environment. I don't know why he said that. I noticed that he said it. I don't know whether he maybe that meant that he felt that two parents couldn't keep their story straight because the judge thought that it was a story. I don't know. It bothered me a bit but this is not a criminal case where he has a Fifth Amendment right and they can't draw any conclusions from his not testifying. It doesn't happen in this type of case. Could it be bothering that there wasn't sufficient interest? Possibly. Explain the circumstance. Potential inconsistency. Do you have any definition given to when they say it happened by non-accidental means or not? I know that the judge uses that to say that the dog could have jumped on the minor and broke his leg but could that type of action by a dog fall into the definition of non-accidental means? I don't know that it's ever been defined in those terms. I think we're talking here I think even when the non-accidental was being used we're talking in terms of a two month old who's not ambulatory who can't have tripped fallen bumped into something while crawling. I think that was more the way that the child was fine during the day. I think that's the way the judge was looking at it more. The non-accidental meant that it was nothing that the child could have caused. Apparently I don't know enough about the type of fracture but maybe not something even if he was learning to do. Do we know what the factual basis was for the child endangerment conviction? No. Because the parties stipulated that the people could produce evidence sufficient to support it and the people just introduced the conviction and I don't have that in front of me. I don't recall if it was detailed in the case. I don't know what the dangerous animals were. I was wondering if it was the same pit bull massive rather large heavy dog. No further questions. Thank you counsel. Thank you. Mr. Malone. You may reply. I wanted to address the question posed by your Honor on whether or not the dog landing on the child's leg would constitute a basis for neglect and my response to that is really we look at the neglect the definition of neglect is essentially a failure on the part of the parent to exercise their parental duties. I don't think there's any dispute that this particular dog was in the house that a child had inadvertently opened the door and not intended for this to happen. The dog ran out and jumped into the car onto the child's leg. There is no dispute that this was an accident and despite the state's position as to whether it was an injurious environment or whatever accidents do happen and we can't ignore that possibility and so this was an accident and I think accidents are uniquely unless the parent had to cause it for example didn't fasten the seatbelt there are ways that accidents can happen where the parent has not done their duty but in this case there was really no evidence to that effect and so neglect cannot be proven. An injurious environment is really a subset of neglect. And with respect to the definition of what an injury means we just don't those are terms of art that we don't have an expert in the raw data the raw exhibits that I'm not objecting to suggesting to us what that means in fact I'm not even sure Dr. But in this case he claims he didn't rely on any of that he claims he relied on some old indicator reports and I think the last one was 08 so the precipitating reason for this reason for this petition was this accident not the previous indications or crimes but he's got he uses the criminal conviction for endangering the life or health of a minor he does not solely base it on indicated findings so I think he is using that conviction in addition to these indicated findings I'm just saying this is a child with a broken leg and those indicated findings and this conviction and those three things together give us the preponderance of the evidence well you know this father was present had served his time had paid his his penalty we don't as was mentioned we don't know what was involved in the engagement whether how old the child was what the father's status was in that or whether he had pledged to it we don't know the details of it but we do know that he apparently had served his time or at least wasn't incarcerated at the time of this happening we know it's quite cold and we know from the Supreme Court that if we were for example to say that he was at that time they had filed something they might have been able to find him unfit we would have concluded based on what he may or may not have done that that that was the basis for finding him unfit but as with everything in life we allow for maturity we allow for people to change and unless somebody can show specifically that that did not occur I think that the burden is on the state to prove that this child endangerment has any nexus to the current environment you know if I had caused an accident five years ago and somebody just decided to sue me for an accident that I wasn't involved with on the basis that I was in an accident five years ago it doesn't prove the current accident it only proves that I had some trouble in my past but it doesn't prove the current situation and that's what we're looking at we're not looking at an environment from 2005 we're looking at an environment from 2010 in this country so with respect to the bruising and so forth this is a little bit of a red herring because if you look at the records the medical records we discover a couple interesting things while it is about going to handle fracture we discover that it's not a compound fracture we discover that this is such a and I hate to refer to it as a minor fracture I don't want to understate it but it's of such a minor nature that neither a splint is required nothing is required the child is basically sent home as is and so we don't have a situation where this is even a serious fracture that one would expect necessarily to see bruising now again we're lacking expert evidence testimony as to why should there be bruising nobody is saying there should be that would have been nice to know that Dr. Piedrek had taken a stand but we didn't have that benefit all we could have  was that if they could have subpoenaed the father that they could have called the father to the stand that they thought there was something he was hiding that they needed to let the court know they could have called him and I beg to differ that a parent in a juvenile case does have a right if he's going to say something that doesn't incriminate him he's not going to testify as far as so I think there was a very good explanation as to how the accident occurred and I would ask this court to reverse the trial court's decision below again let's begin to establish some minimum requirements for the trial court below in admitting these documents in particular so that we have a fighting chance to either keep them in or get them out the way it is if the state comes in 218-4 it's in we're going to and I don't believe that's what our founding fathers intended for us to have that in balance in any courtroom and I have explained the solution if it's diagnostic and I appreciate this court's opinion if it's diagnostic it's reliable it's going to get in but let's not fame diagnosis let's not pretend it's something it's not which I think happened here and let things in the end result is we're going to go get a pediatrician to write a letter that says it's not accidental and amid that where is the court going to be deciding between the counsel both for your arguments in this matter this morning it will be taken under advisement a written